**SO ORDERED.**

**SIGNED this 05th day of December, 2006.**

_____
LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE
_____

# United States Bankruptcy Court

### Western District of Texas
### San Antonio Division

| | |
|---|---|
| IN RE:<br>JOE DONNELL AND<br>RAQUEL VILLA DONNELL<br><br>*DEBTOR*S | BANKR. CASE NO.<br>05-53073-LMC<br><br><br>CHAPTER 7 |

## DECISION AND ORDER ON TRUSTEE'S MOTION TO COMPEL DEBTORS TO TURN OVER PORTION OF 2005 FEDERAL INCOME TAX REFUND

Before the Court is a Motion by the chapter 7 trustee ("Trustee") seeking to compel turnover of a portion of the married debtors' 2005 income tax refunds. The Court must determine whether a bankruptcy estate is entitled to any portion of the debtors' federal income tax refunds for the tax year during which the debtors filed for Chapter 7 bankruptcy. For the reasons stated below, the motion is GRANTED IN PART and DENIED IN PART.

-1-

**Facts**

Mr. & Mrs. Donnell filed this Chapter 7 case on May 26, 2005 and received their discharge on September 5, 2005. In 2006, Mr. and Mrs. Donnell ("Debtors") filed separate federal income tax returns for the 2005 tax year. They received refunds of $6,729.00 and $4,338.00 respectively. The Chapter 7 trustee filed this motion seeking turnover of a portion of the refunds, on grounds that the refunds derive from a tax year including the pre-bankruptcy filing period. The trustee maintains that that portion of the refunds equal to the ratio of the number of pre-petition days in the tax year to the total number of days in the tax year is necessarily property of the estate under section 541 and thus subject to turnover. He seeks a share calculated at 145/365 of each of the Donnells' tax refunds.

Mr. Donnell's tax return shows that his refund of $6,729 resulted from $9,328 of wage withholding, less a total tax of $2,599. According to pay stubs introduced by Mr. Donnell, somewhere between $3,634 and $3,191 was withheld in the pre-petition portion of the year.[1]

Mrs. Donnell's tax return showed a refund of $4,388, resulting from wage withholding for the year of $2,266, $1,914 of earned income credit, and $540 of additional child tax credit. Mrs. Donnell's total tax was $382.[2] The record indicates that all of Mrs. Donnell's prepetition withholding, totaling $613, came from her Texas unemployment compensation benefits.

Neither of the Donnells made the "short year election" allowed under 26 U.S.C. § 1398.

---

[1] The date of filing of the petition fell in the middle of a pay period.

[2] Mrs. Donnell was entitled to a child tax credit and to an additional child tax credit. Only the additional child tax credit is "refundable." That is why it is included in this listing – and why the child tax credit is not. The complexities of the child tax credit are discussed in greater detail (and with greater clarity) *infra*.

## Discussion

A taxpayer is generally entitled to the refund of any overpayments of income tax for the applicable tax year. 26 U.S.C. § 6402(a) ("In the case of any overpayment, the Secretary . . . shall . . . refund any balance to [the taxpayer]."). [3] Overpayments result when the sum of any "refundable" tax credits, such as overpayments, wage withholding and earned income credit ("EIC"), exceed the tax imposed under the Internal Revenue Code in that year. *Id.* at § 6401. Unless a debtor makes a "short year election", the taxable year of a Chapter 7 debtor is determined without regard to the bankruptcy filing. *See* 26 U.S.C. § 1398(a),(d). [4]

The Bankruptcy Code makes, with limited exceptions, "all legal or equitable interests of the debtor in property as of the commencement of the case" property of the bankruptcy estate. 11 U.S.C. § 541(a). Therefore, any part of the Donnells' post-petition refunds representing "interests of the debtor[s] in property as of the commencement of the case" must be turned over to the Trustee. *Id.*; *see* also 11 U.S.C. § 542(a). The initial inquiry is simple – how do we determine what part, if any, of the income tax refunds, is property in which the Donnells had an interest on the date of filing?

### Post-Petition Income Tax Refunds May Be Property of the Estate

The Supreme Court first addressed whether a tax refund could be property of the estate in a Bankruptcy Act decision, *Segal v. Rochelle*, 382 U.S. 375 (1966). In *Segal*, the debtors received a tax refund post-petition, resulting from the application of loss-carrybacks to pre-petition tax years.

---

[3] *See also* Kurtis A. Kemper, *Sufficiency and Perfection of Informal Administrative Claim for Credit or Refund of Federal Tax Overpayments*, 192 A.L.R. FED. 215 (Westlaw 2006) (outlining the ground rules for making a sufficient informal administrative claim with the IRS for a tax refund such that the taxpayer may maintain a suit in federal court).

[4] The Donnells had good reason not to make this election, because doing so would have caused them to lose their EIC and their child tax credits ("CTC"), which in turn would have increased their respective income tax liabilities. *See* 26 U.S.C. § 32(e) (disallowing the EIC for taxable years of less than 12 months); 26 U.S.C. § 24(f) (doing the same with respect to the CTC).

-3-

*Id.* at 376. The Bankruptcy Act (unlike the Bankruptcy Code) lacked a specific definition of what constituted property of the bankruptcy estate, requiring the Court to supply a standard. The Court stated that, in developing a rule for what constitutes property of the estate, the Court needed to be attentive to the overall purposes of the Bankruptcy Act. The Court divined two overarching purposes, the first of which was "to secure for creditors everything of value the bankrupt may possess in alienable or leviable form when he files his petition." *Id.* at 379. The Court added that the term "property" had been broadly construed to achieve that end, permitting even novel or contingent interests to be included. *Id.* On the other hand, said the Court, there is a prudential *limitation* on this otherwise broad reach. Because a principle purpose of the Bankruptcy Act was "to leave the bankrupt free after the date of his petition to accumulate new wealth in the future," some items that might otherwise conceivably be swept up as property are *excluded*, such as future wages, or a promised gift, "even though state law might permit all of these to be alienated in advance." *Id.* at 379-80. Thus, in response to this limitation on the breadth of property includible in the estate, the Court ruled that only property that is "sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupts' ability to make an unencumbered fresh start" should be includible as estate property. *Id.* at 380. The Court found that the loss-carryback refund claims at issue in the case passed this second test, and so could be included as property of the estate. *Id.*

The Supreme Court next addressed the status of tax refunds in bankruptcy in *Kokoszka v. Belford*, 417 U.S. 642 (1974). In *Kokoszka*, another Bankruptcy Act case, the debtor filed his bankruptcy petition in early January, 1972. *Id.* at 644. The Court ruled that the entire 1971 tax refund was property of the estate **B** despite the refund not being in the debtor's possession at the time of the filing **B** because "[t]he tax payments refunded here were income tax payments withheld from the petitioner prior to his filing for bankruptcy and are based on earnings prior to that filing." *Id.* at

647. Applying *Segal*, the Court said that the tax refund was sufficiently rooted in the debtor's pre-bankruptcy past that it would not be unfair to the debtor to treat the refund as property of the estate. *Id.* at 648.

The Fifth Circuit has only tangentially addressed the question of tax refunds as property of the estate. *See In re Luongo*, 259 F.3d 323, 329 n. 4 (5th Cir. 2001). Focusing on whether a bankruptcy court had jurisdiction to entertain a section 505 action in which the estate would realize no benefit (because the refund, if allowed, was claimed as exempt), the Fifth Circuit noted in passing that the refund would be property of the estate because "any overpayment ... occurred prepetition and any right to a refund is therefore property of the estate." *Id.* The court cited *Kokoszka* for authority for this assertion, but engaged in no further analysis.

The Tenth Circuit *has* addressed the question more directly, applying its understanding of *Segal* and *Kokoszka* to decide that the pre-petition portion of a tax refund was property of the estate. *Barowsky v. Serelson (In re Barowsky)*, 946 F.2d 1516, 1518 (10th Cir. 1991).  Said the court, "the pre-petition portion of the refund essentially represents excessive tax withholding which would have been other assets of the bankruptcy estate if the excessive withholdings had not been made." *Id.* *Barowsky* stated that (at least in the context of tax refunds) the Bankruptcy Code's explicit definition for "property of the estate" did not overrule the holding in *Segal* that a tax refund arising from a pre-petition tax year would be property of the estate, citing with approval to the legislative history to section 541(a)(1). *See id.* at 1518-19.[5]

---

[5] *Barowsky* also unfortunately introduced some confusion into our modern understanding of *Segal*. Earlier in its discussion, the Tenth Circuit opined that the Supreme Court in *Kokoszka* "*held* that the refund was 'sufficiently rooted in the prebankruptcy past, and so little entangled with the bankrupts' ability to make an unencumbered fresh start that it should be regarded as "property"'" *Barowsky*, 946 F.2d at 1517 (emphasis added). In so doing, the court may have created the misimpression that "sufficiently rooted in the pre-bankruptcy past" is a test for determining whether the debtor has a legal or equitable interest in the property in question (as opposed to a test for a *limitation* on the otherwise broad reach of the property of the estate concept). *See* discussion *supra* regarding *Segal v. Rochelle*. Later in the *Barowsky* decision, the Tenth Circuit hews back to the actual holdings in both *Segal* and *Kokoszka*. Rejecting the

The Fifth Circuit's recent *en banc* decision in *Burgess* significantly informs our analysis of this issue. The court there held that, with the enactment of an explicit statutory definition for "property of the estate" in the Bankruptcy Reform Act of 1978, *Segal*'s 'sufficiently rooted' test did not survive the enactment of the Bankruptcy Code." *Burgess v. Sikes (In re Burgess)*, 438 F.3d 493, 498 (5th Cir. 2006) (en banc). This conclusion is consistent with the actual holding in *Barowsky*, though it more explicitly (and correctly) rejects the notion that "sufficiently rooted in the pre-bankruptcy past" describes the scope of the estate's interest in property.[6]

*Burgess* was not a tax refund case. It involved crop disaster relief payments resulting from Congressional legislation enacted after the debtor's discharge. Although the payments were made in compensation for crop losses suffered by the debtor pre-bankruptcy, the Fifth Circuit ruled that the payments in question were not property of the bankruptcy estate because the law authorizing the payments was not enacted until after the farmer's bankruptcy filing. *Id.* at 503. The Chapter 7 trustee had argued that *Segal*'s "sufficiently rooted" test meant that the payments *should* be property of the

---

argument that these cases have been undermined by the enactment of the Bankruptcy Code, the Tenth Circuit cites not to the "sufficiently rooted" language (a test for whether the debtor's fresh start might be impaired were the property in question made part of the estate), but to the "everything of value [that is] in alienable or leviable form when [the bankrupt] files his petition" prong. *Barowsky*, 946 F.2d at 1518. The legislative history to section 541(a)(1), favorably cited by the court, does not mention the "sufficiently rooted" language. It merely states that the Code should be read to yield the same *result* as obtained in *Segal*. *Id.* at 1519. Thus, although *Barowsky*, if quoted out of context, could be misleading, its holding is in fact faithful to the Supreme Court's analysis in *Segal*.

   [6] As we have seen, it does not. The language was employed by the Supreme Court in *Segal* to determine whether the debtor's "fresh start" would be impaired were the property in question incorporated into the estate. This was a live issue under the Act. Because any alienable or leviable property could become property of the estate, a debtor's future wages in perpetuity could conceivably be swept up – because many states in 1966 permitted full wage garnishment, a species of alienation or levy. By limiting the reach of property to that "sufficiently rooted in the pre-bankruptcy past," the debtor's future wages (which are, by definition, *not* "rooted in the pre-bankruptcy past" of the debtor) would thereby be insulated from estate administration. The Bankruptcy Code has no need for this limitation. Instead, the statute itself *de facto* excludes certain assets from inclusion in the estate, first by changing the reach of estate property from "any alienable or leviable property" (the scope under the Act, according to *Segal*) to "all legal or equitable interests in property as of the commencement of the case" (the scope under the Code). Secondly, section 541 itself contains specific statutory exclusions from the reach of section 541(a)(1), including the "except" clause in section 541(a)(6) for post-petition earnings, and the various exclusions in section 541(b). This is what the Fifth Circuit meant when it ruled that *Segal*'s "sufficiently rooted" test did not survive the enactment of the Code.

-6-

estate because they were based upon crop losses that occurred before the debtor's bankruptcy filing. The court disagreed with this reading of *Segal*, noting that the Bankruptcy Act (under which *Segal* was decided), unlike the Bankruptcy Code, did not contain a definition of property of the estate, necessitating the court-created two-pronged test crafted in *Segal*. *Id.* at 498-99 (citing *Goff v. Taylor*, 706 F.3d 574, 578 (5th Cir. 1983)). Acknowledging that Congress did not intend to overrule the *result* in *Segal* when it enacted section 541(a)(1), the court nonetheless rejected the trustee's contention that the "sufficiently rooted" phraseology should be read to *expand* the scope of estate property under the Code. Even if that were a legitimate "read" of *Segal* (and it was not), it could not be squared with the plain language of the Code itself. *Id.* at 498. The court noted that section 541(a)(1) expressly delimits the scope of estate property to whatever legal (or equitable) interests the debtor has at the moment of filing (*i.e.*, "the commencement of the case"). *Id.* at 496 (emphasis added); *see also* 11 U.S.C. § 541(a)(1). As of the commencement of the case in *Burgess*, the debtor "had only a mere hope" of receiving a crop disaster relief payment for his crop loss, because Congress had not yet enacted any law to authorize such a payment. Such a mere hope could not rise to the level of a legal or equitable interest in property. *Id.* at 503. Thus, regardless the relationship of the crop payment to the pre-petition crop loss, the debtor had no legal or equitable interest in the crop payment as of the commencement of the case; the debtor had only the mere hope that Congress would act in response to the loss.[7]

Nothing in *Burgess* alters the broader conclusion drawn from *Segal*, *Kokoszka*, *Barowsky* and *Luongo* that some portion of a tax refund may be property of the estate. *Burgess* stated, "a debtor's interest in property may be contingent – or enjoyment of the interest may be postponed –

---

[7] The "mere hope" sprang from the fact that, in the past, when farmers suffered a crop disaster such as this, Congress usually responded with *ad hoc* legislation to address the loss, typically including disaster relief payments to affected farmers.

until after bankruptcy, but the debtor must have had a pre-petition legal interest nonetheless." *Id.* at 499. *Burgess* thus teaches that the trustee will only be entitled to that portion of the refund in which the Donnells had a legal or equitable interest as of the commencement of their case, though that interest may well be contingent as of that point in time.

*Burgess* does not discard the relevance of *Segal*'s observation that interests in property can spring from pre-petition events. It *does* correct a common misperception regarding the *Segal* Court's actual ruling. The Fifth Circuit pointed out that the "sufficiently rooted" inquiry used by *Segal* applied to the *second* of a two-pronged consideration, to wit, whether the interest in question was "so little entangled with the bankrupts' ability to make an unencumbered fresh start that it should be regarded as 'property' under § 70a(5) [of the Bankruptcy Act]." *Id.* at 497-98 (citing *Segal*, 382 U.S. at 379-80). The *first* of the two-pronged considerations is the one more closely relevant to the case *sub judice* – "to secure for creditors everything the bankrupt may possess . . . when he filed his petition." *Burgess* says that "[t]o achieve that goal, property was construed to include interests that are novel, contingent, or the enjoyment of which must be postponed . . . under current law, a debtor's interest in property may be contingent – or enjoyment of the interest may be postponed – until after bankruptcy, but the debtor must have had a pre-petition legal interest nonetheless." *Id.*, at 497-98. Then, importantly, *Burgess* notes that in *Segal*, the debtor there *did* have a pre-petition legal interest in the tax refund in question, because section 172 of the version of the Internal Revenue Code then law at that time,

> gave the debtor a *claim* for a tax refund if certain conditions were met. It was the combination of the law and the conditions made legally relevant by the law that conferred on the debtor a pre-petition legal interest: the claim for the refund. In that way, the *Segal* debtors' claim for a refund is similar to the pre-petition accrual of a cause of action that results in a post-petition judgment in the debtor's favor. In such cases, the debtor's cause of action is a pre-petition legal interest – § 541(a)(1) property – that brings the post-petition judgment into the estate as proceeds under §

-8-

541(a)(6).

*Id.*, at 499. What has been jettisoned is the inquiry into whether the property determination will in some way hamper the debtor's fresh start – the Code clearly dispensed with that inquiry. What was *not* jettisoned (and the legislative history to the Bankruptcy Reform Act of 1978 confirms this) was *Segal*'s first prong, that of securing for creditors everything the debtor possesses (*i.e.*, has a legal or equitable interest in) when he files for bankruptcy. 11 U.S.C. § 541; *see also* NORTON BANKR. LAW & PRAC. 2D, BANKRUPTCY CODE, Legislative History and Comment to 11 U.S.C. § 541(a).[8]

The task set for the court by these authorities (especially by *Burgess*) then, is to determine whether, based on all the relevant facts, the debtors, as of the commencement of the case, had a legal or equitable interest in the tax refund that the debtors ultimately received in this case. That, in turn, raises another conundrum, however. What facts *are* relevant to this sort of determination? And who has the burden of production and the burden of proof?

### Allocating the Tax Refund – What's Relevant

The Trustee argues that the proportion of the refund attributable to the pre-petition period is equal to the ratio of the number of pre-petition days in the tax year to the total number of days in the tax year (a "pro rata by days" allocation method).[9] The Debtors argue that this allocation method does not take into consideration other evidence regarding the make-up of the refund. They submitted copies of tax returns, pay stubs, and the like to show that the proportion of the refund

---

[8]      The *result* of Segal v. Rochelle, 382 US 375 (1966), is followed, and the right to a refund is property of the estate.

             . . .

     Paragraph (1) has the effect of overruling Lockwood v. Exchange Bank, 190 US 294 (1903), because it includes as property of the estate all property of the debtor, *even that needed for a fresh start*.

*Id.* (emphasis added).

[9]   Pro rata, of course, means "Proportionately; according to an exact rate, measure, or interest." *Black's Law Dictionary* (8th ed. 2004). The Court specifies "by days" to differentiate a time-based pro rata allocation from other facially reasonable possibilities, such as pro rata by estimated tax liability, income, or withholding.

allocable to the pre-petition period should actually be lower than that yielded by the Trustee=s pro rata by days proposed allocation.

The Trustee's proposed allocation method is commonly employed, according to the reported case law. *See In re Orndoff*, 100 B.R. 516, 518 (Bankr. E.D. Cal. 1989) (stating that prorating by days is the most generally used and efficient method); *see also Barowsky*, 946 F.2d 1516, 1518 n.1 (stating that the debtors did not contest the bankruptcy court's use of a pro rata by days formula); *In re Bading*, 154 B.R. 687, 688 (Bankr. W.D. Tex. 1993); *Montgomery v. Jones (In re Montgomery)*, 224 F.3d 1193, 1195 (10th Cir. 2000); *In re Griffin*, 339 B.R. 900, 902-03 (Bankr. E.D. Ky. 2006). The earliest Code case employing a proration of tax refunds by days appears to be *In re DeVoe*, 5 B.R. 618, 620 (Bankr. S.D. Ohio 1980). That court wrote:

> In the instant case, debtor had a tax refund that arose as a result of 354 days of withholdings before filing and 11 days of withholdings after his voluntary petition was filed on December 20, 1979. The formula for apportioning the refund arises from the mathematical relationship between the days withheld before and after the petition is filed. The estate is entitled to 354/365th of the refund and the debtor is entitled to 11/365th of the refund. Of course, debtor is entitled to claim his exemptions against the portion of the refund in the estate. This method of apportioning is reasonable under the circumstances. Further, the method has been used in allowing a claim for vacation pay. *In re Ad Service Engraving Co.*, 338 F.2d 41, 43 (6th Cir., 1964).

*Id.* at 620. The court seems to have used the pro rata by days method because it looked "reasonable under the circumstances," and had been used in another context (allocation of vacation pay) that the court found to be analogous. None of these cases, however, say that a court *must* pro-rate by days.

Whether this allocation method is *mandatory* for purpose of allocating a tax refund must be resolved here, because the trustee has offered only the filing date and a request that the court take judicial notice of the calendar as evidence to support his claim. The trustee also objected to the introduction of the debtors' evidence as irrelevant. If "pro rata by days" is the *only* legally relevant

allocation method, then the debtors' evidence must be discounted, and the court's task is complete once it has applied the appropriate fraction to the amount of the refund. If that method is not mandatory, then the debtors' evidence will be relevant.

The Trustee relies on *Segal* to support his contention. That reliance is misplaced, however. Firstly, *Segal* was decided on facts not present here. There, the *entire refund* was attributable to events all of which occurred *before* the debtor filed for bankruptcy. *Segal*, 382 U.S. at 376. Here, the bankruptcy was filed in the midst of the debtors' tax year. What is more, as *Burgess* pointed out, the Supreme Court in *Segal* itself acknowledged the need for an individualized, fact-based examination in order to determine whether the debtor "possessed an interest" in the refund as of the date of filing. *See Burgess*, 438 F.3d at 498 (quoting *Goff*, 706 F.2d at 578). Facts showing that some portion of the refund derives from post-petition earnings of the debtor, for example, would, under *Burgess*, be relevant to the question whether the debtor had a legal or equitable interest in the refund as of the commencement of the case. And even under *Segal*, it would be error to ignore those facts.

The Trustee's argument is also contradicted by the result in *Christie v. Royal (In re Christie)*, 233 B.R. 110 (B.A.P. 10th Cir. 1999). In *Christie*, the self-employed debtors made no pre-petition tax payments. Post-petition, the debtors made large estimated tax payments, which resulted in an overall refund for the tax year. The Bankruptcy Appellate Panel for the Tenth Circuit ruled that the entire refund should be awarded to the debtors, because the source of the estimated tax payments was post-petition earnings. The Panel found the case distinguishable from *Barowsky* because, in *Christie*, none of the estimated tax payments occurred pre-petition, so none of those payment could have represented "excessive tax withholding which would have been other assets of the bankruptcy estate if the excessive withholdings had not been made." *Id.* at 113 (quoting *Barowsky*, 946 F.2d at 1518). The *Christie* court implicitly eschewed a pro rata by days allocation method by awarding

-11-

*none* of the refund to the trustee, despite the fact that the chapter 7 filing occurred during the tax year that generated the refund. *Id.* at 111-13.

The Trustee claims support for restricting the court's purview to the calendar by citing to this Court's decision in *In re Bading*, 154 B.R. 687 (Bankr. W.D. Tex. 1993). But *Bading* offers little shelter for the Trustee's position. There, the debtor first filed for Chapter 7 bankruptcy, then married later in the same calendar year. The debtor argued that, because she was single at the time of the filing, the portion of her tax refund for that year belonging to the estate should be calculated based upon a hypothetical tax liability that assumed she had remained single. This liability would have been higher, making her total refund lower, ultimately reducing the amount that the Trustee could claim for the estate. This Court refused to engage in such hypothetical tax calculations, deciding instead to parse the tax refund "based not on 'what ifs' but what is." *Id.* at 689. The ruling in *Bading*, if anything, contradicts the Trustee's position because it emphasizes the importance of deciding the property of the estate question by an examination of all the factual circumstances that give rise to the refund. The Debtors here are not asking this Court to construct some sort of hypothetical. To the contrary, they complain that the Trustee's approach, by ignoring other potentially relevant facts, commits the very error disapproved in *Bading* – insisting that the court *hypothesize* that a pro-rata-by-days approach captures all the relevant facts for determining the debtor's interest in the tax refund as of the commencement of the case, regardless of other facts that might demonstrate otherwise.[10]

Finally, and most importantly, the Trustee's argument also fails because it cannot be squared with the plain language of section 541 itself. That section's "temporal limitation," confining the

---

[10] It is useful to note as well that, in *Bading*, noone challenged the time-based proration method there employed. The issue whether the method was mandatory was not presented to the court in that case.

extent of property of the estate to the debtor's legal and equitable interests "as of the commencement of the case," plainly requires a court to consider all the facts relevant to the nature and extent of a debtor's accession to any property interest as of that particular point in time. *See* 11 U.S.C. § 541(a); *cf. Burgess*, 438 F.3d at 505 (finding dispositive the fact that the crop disaster payment legislation that gave rise to the payment was only enacted into law *after* the commencement of the case). A pro rata by days allocation method ignores many facts that may be relevant to answering that question accurately, and can yield a result that would *create* an interest where none in fact exists as a matter of law. *See In re Christie*, 233 B.R. at 112-13.

Thus, a "pro rata by days" allocation methodology for parsing the estate's ownership in a tax refund is not the sole means for making that determination as a matter of law. Other facts may be relevant to answering the ultimate question posed by the statute.

### Allocating the Tax Refund – Who Bears the Burden of Proof

At this point, then, we thus know that (1) some portion of a individual debtor's income tax refund for the tax year in which that debtor commences a Chapter 7 bankruptcy case may be property of the estate, and that (2) "pro rata by days" is not the sole determinant regarding what portion of the refund may be property of the estate. But if other evidence beyond proration by days may be relevant, then who has the burden of production, and who bears the ultimate burden of proof on the question?

At base, this is a turnover action brought under section 542(a). The burden of proof in such an action lies with the party seeking turnover. *See Turner v. Avery*, 947 F.2d 772, 774 (5th Cir. 1991). Where the question is not qualitative, but quantitative, it logically follows that the party seeking turnover bears the burden of presenting evidence that, by a preponderance, shows the proportion of the property that rightly belongs to the estate. Thus, it would appear that it is the

-13-

trustee who must come forward with sufficient evidence to establish that the portion of the tax refund claimed is in fact property in which the debtor had a legal or equitable interest as of the commencement of the case.

It is true that, in *DeVoe, Orndoff* and their progeny, the trustee seeking turnover of an income tax refund simply pointed to the calendar, and with nothing more, was said to have made the case, relying solely on a "pro rata by days" allocation of the refund. The trustee prevailed in those cases not because "pro rata by days" allocation is *the* way to prove up the turnover action but rather because that method of allocation is *a* way to prove it up. Absent any other proof on the question, a calendar-based allocation is at least some evidence to support the trustee's position.

The problem with the approach is that it rests on assumptions which cannot, as a matter of evidence, be presumed. "Pro rata by days" assumes that the value of a debtor taxpayer's legal or equitable interest in a tax refund increases more or less linearly over the course of the tax year. That assumption, in turn, rests on the further assumption that the debtor had a steady income during the tax year, had regular withholding of income taxes throughout the tax year, and had an interest in any refundable tax credits that grew regularly over the tax year. At least in the case of the Donnells, these assumptions are belied by the evidence presented by the Debtors. For example, Mr. Donnell's post-petition withholding was almost double the pre-petition amount, although he filed his bankruptcy petition in late May of his tax year. The record shows that *all* of Mrs. Donnell's "earned income"[11] – an important figure in calculating the tax credits at issue in this case – occurred in the post-petition period. The inference that the value of these debtors' legal or equitable interest in their tax refunds grew linearly over the course of the year would thus, in this case, be error. When (as here) other evidence shows that either income or credits were *not* accumulating with regularity

---

[11] Defined in 26 U.S.C. § 32(c)(2) and Treas. Reg. § 1.32-2(c)(2).

-14-

through the tax year, something more is required than just judicial notice of the filing date and the calendar for the Trustee to prevail.

### The Court Examines Each of the Sources of the Refund

The facts of this case, as noted, preclude reliance on the "pro rata by days" standard, but what should the Court use in its place? Tax refunds do not grow monolithically throughout the year; rather, they are a function of the type and timing of different types of income, deductions and credits. *See infra*. While gross income[12] monotonically increases with time over the tax year, a taxpayer's right to certain credits may grow, shrink, or remain constant over the year, depending upon the various provisions of Internal Revenue Code allowing the credits.[13]

Instead of treating the tax refund as an allocable monolith, a court needs to examine each of the *components* of the tax refund to determine whether, on the petition date, the debtor possessed a legal or equitable interest in that component. *Cf. Burgess*, 483 F.3d at 496. If the extent of the debtors' legal or equitable interests in the components of the refund can be determined, then the task is to decide how much of that refund is attributable to each component.[14] The analytical question, then, is this: for each element of the tax refund, did each debtor have a legal or equitable interest in that element on the petition date, and, if so, how much? *See Burgess*, 438 F.3d at 499. To answer

---

[12] 26 U.S.C. § 61 (defining gross income).

[13] *Compare* 26 U.S.C. § 32 (implementing the earned income credit, which starts the tax year at zero, and generally grows with "earned income") *with id.* § 24 (implementing the child tax credit, which starts at $1,000 per child and then phases out with adjusted gross income) *and id.* § 25A (implementing the "Hope and Lifetime Learning Credits" which generally allows as a credit a percentage of certain educational expenses paid by the taxpayer). A detailed discussion of the specific credits relevant to this case follows *infra*.

[14] Admittedly, the task is akin to unscrambling an egg, thanks to the myriad deductions, credits and other considerations that go into calculating a refund. Or, to employ a metaphor more welcome to those who have spent too much time pondering bankruptcy taxation, the task is like stirring the pousse-café. *See* Eric Felten, "Neither Shaken Nor Stirred," *Wall St. J.*, Sept. 16, 2006, at P9 (describing the pousse-café as a multi-layered, colorful, alcoholic drink popular in the late 1800s and early 1900s, which is difficult to construct and turns into an unattractive brown sludge when stirred).

this question will require an examination of both the evidence presented by the Debtors and an examination of the law relating to tax refunds – specifically the law regarding when and whether a taxpayer has a legal or equitable claim on the IRS for the refund attributable to the various tax credits created under the Internal Revenue Code. In this case, the elements of the tax refunds are wage withholdings, earned income credits, and additional child tax credits.[15] Trustee's Exhibit 1. The Court turns to an examination of each of these credits.

### Allocating the Refund – Withholding

Tax withheld on wages is a fully refundable tax credit. 26 U.S.C. § 31. Generally, a tax refund results from refundable tax credits that exceed the amount of tax otherwise due. *See id.* §§ 6401, 6402. When a bankruptcy case is filed before the end of a debtor's tax year, withholding may have been made from pre-petition wages, or from post-petition wages, or some combination thereof. Withholding made pre-petition represents funds that would have been "other assets of the bankruptcy estate" had they not been withheld. *See Barowsky*, 946 F.2d at 1518. By contrast, wage withholding made post-petition cannot be a valid source of a claim by the bankruptcy estate, because the monies in question were withheld from post-petition earnings, which themselves would not be

---

[15] The reader with some knowledge of tax law may ask why the Court focuses upon only the refundable credits in this analysis. First, without refundable credits (which include excess withholding), there can be no refund, so to the extent that the debtor has any interest in a refund on the petition date, it must come from refundable credits. *See infra.* Second, the trustee claims a portion of the refund, not a declaratory judgment that the trustee is entitled to any particular tax credit. The Court need not consider granting that which is unasked for. Third, even if the trustee were to claim a credit, it is at least debatable whether the holding of *Prudential Lines* would apply in an individual debtor's Chapter 7 case. *Prudential Lines* held that a net operating loss carryforward was property of the estate in a corporate Chapter 11 case. *In re Prudential Lines*, 928 F.2d 565, 569 (2d Cir. 1991). Unlike corporate bankruptcies, where the treatment of certain tax attributes has fallen to the courts, *see e.g. id.*, Congress has drawn up a detailed legislative scheme for the disposition of individual debtors' tax attributes in Chapters 7 and 11, including treatment of net operating loss carryovers and other credit carryovers. *See* 26 U.S.C. § 1398(g). Because section 1398(g), despite its detail, contains no provision calling for the bankruptcy estate to succeed to any of the tax credits claimed by the debtors in this case, it could be that a claim by the trustee to such a credit *qua* credit would fail.

This is not to say that a trustee could never make a claim to a refund based upon the debtor's interest in a nonrefundable credit or other tax attribute. For example, a postpetition debtor could file an amended return for a prepetition year, claiming a previously unclaimed nonrefundable credit as the basis for a refund. The resulting refund would seem to rightfully belong to the estate. However, that is a case for another day.

property of the estate in a chapter 7 case. *See Christie* 233 B.R. at 112-13.

Yet it is not a simple matter of calculating the amount of monies withheld pre-petition, as a fraction of the amount of monies withheld over the tax year. A hypothetical explains why. Taxpayer T's total income tax for the year in which T filed for bankruptcy is $3,500. Assume that he has EICs of $1,000 and CTCs of $1,000. Further assume that T had pre-petition wage withholdings of $1,000. Finally, assume that T has an additional $1,000 withheld from his wages post-petition. T is due a $500 refund from the IRS on these facts. How much of this refund is property of the estate? The answer is zero, because the refund would not exist, but for T's post-petition withholdings, which in turn come from post-petition earnings. A tax refund that only results because of withholding from post-petition earnings cannot be property of the estate, because post-petition earnings are not "legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a); *Christie*, 233 B.R. at 113 ("[A] chapter 7 debtor's postpetition earnings clearly are not property of the estate.").[16]

This reasoning also finds support in *Burgess*, which justified its conclusion that the post-petition crop damage authorization legislation did not create property of the estate by stating, "Were the law otherwise, any post-petition legislation or contract could retroactively create property of the

---

[16] Suppose T, in our hypothetical, chose *not* to have any tax withheld from his paycheck post-petition? Then, with only $1,000 withheld (instead of $2,000), T would *owe* taxes for the year, in the amount of $500, and there would be no refund to talk about. It is true that, had the monies *not* been withheld from the debtor's wages pre-petition, and had they instead been deposited into a savings account, where they resided until the bankruptcy filing, they would certainly be property of the estate. By the same token, however, those same monies, withheld and ultimately applied to pay the debtor's tax liability for the year, generate no property for the estate because no refund is ultimately generated. *See* 26 U.S.C. § 31 (withholding tax creates a tax credit); 26 U.S.C. § 6401 (tax credits refundable only to the extent they exceed tax liability). The trustee's "expectation" as of the commencement of the case (based on how much has been withheld from the debtor's wages as of the date of filing) is dashed by the reality that the debtor ended up owing more in taxes than the debtor had withheld *for the year*. No property ever ultimately materialized. *See* Kuntz v. United States (In re Halle), 132 B.R. 186, 190 (Bankr. D.Colo. 1991) (income tax prepayments made pre-petition not property of the estate).

And, of course, it would be laughable to suggest that, as of the commencement of the case, the trustee, as successor to the debtor, would have the right to demand withholdings made to date from either the employer or the IRS. *See id.*; *see also* 26 U.S.C. § 6401.

-17-

estate. That cannot be the law; § 541 clearly states that a bankruptcy estate is established at '[t]he commencement of [the] case.'" *Burgess*, 438 F.3d at 503. The logic of *Burgess* requires this Court to conclude that post-petition tax withholdings from wages cannot retroactively create property of the estate (and pre-petition withholding cannot be property of the estate until a refund is actually generated).

With these thoughts in mind, we turn to the evidence presented in this case, with respect to withholding tax, reiterating that the ultimate burden of proof on the issue lies with the Trustee. *See Turner*, 947 F.2d at 774. Here, the Trustee (assuming regular, periodic withholding throughout the tax year) simply asked the Court to take judicial notice of the filing date and the calendar. In rebuttal, Mr. Donnell put on evidence that his pre-petition withholding was at least $3,191.[17] This amount exceeded his tax liability of $2,599 by $592. Thus, out of $3,191 in pre-petition tax credit from withholding accumulated by Mr. Donnell, only $592 of that amount was eventually due back to him as an overpayment in the form of a refund. That is the extent of the Mr. Donnell's legal or equitable interest in the refund as of the commencement of the case attributable to his refundable withholding tax credit.[18]

In this case, the entire burden of paying Mr. Donnell's 2005 income taxes falls upon the withholding made pre-petition.[19] This outcome seems to favor the debtor over the estate, so it is reasonable to ask "Why?" The simple answer is that post-petition, the debtor has no duty to the bankruptcy estate to make any tax withholdings at all. To the extent that a debtor makes such post-

---

[17] Because the burden is on the Trustee, the Court uses the lesser amount for pre-petition withholding.

[18] It is clear from this analysis of the facts how different a result is yielded than is simple reliance on a "pro rata by days" allocation *vel non*.

[19] As discussed *infra*, Mr. Donnell had no other refundable credits for 2005, so allocating his withholding effectively allocates his entire refund.

petition withholdings, they should naturally accrue to the benefit of the debtor, because despite his Chapter 7 discharge, the debtor remains responsible for his tax liability for the entire tax year, *including* the pre-petition portion. *See* 11 U.S.C. § 523(a); 26 U.S.C. § 1398. It would make little sense, and would contradict *Burgess*, to punish the prudent debtor, who makes sufficient post-petition tax withholding to generate a refund, by then awarding some of those post-petition earnings back to the bankruptcy estate.[20] Had Mr. Donnell, post-petition, earned the same amount, but withheld nothing for federal income taxes, the estate would receive precisely the same amount as it does here. This is entirely fair.

The Court's solution is also better than the two alternatives: (1) attempting to weigh the year's total withholdings based upon the debtor's tax liabilities for the pre- and post-petition periods, or (2) giving the estate the first cut of the refund. A weighing approach based upon an estimation of the debtor's tax liability on the petition date – measured by the difference between any tax liability accrued and withholding and estimated payments made in the pre-petition period – is a tempting option, because it seems sensible that pre-petition withholding should apply only to pre-petition tax liabilities. However, a calculation such as this, requiring an allocation of tax liability to the pre- and post-petition periods, is perilously close to a court-created short year election. The short year election in 26 U.S.C. § 1398(d)(2) is *optional*, and this Court should not adopt a rule that has the effect of imposing such an election where the debtor did not make one. *See* 26 U.S.C. § 1398(d)(1) (expressly stating that, unless a short year election is made, bankruptcy has no effect upon the taxable year of the debtor). Further, the premise that pre-petition withholding should apply only to pre-petition tax liabilities is contradicted by both the Bankruptcy Code and the Internal

---

[20] Which is exactly what would happen were one to employ only the "pro rata by days" allocation suggested by the trustee.

Revenue Code. *See* 11 U.S.C. § 523(a) (bankruptcy does not discharge income tax debt); 26 U.S.C. § 1398 (bankruptcy has no effect upon the tax year without the debtor's making the short year election).

Giving the estate the first priority to the refund is also unsatisfactory. Such a rule would work by giving the estate claim to the entire refund up to the total amount of prepetition withholding. Such a rule cannot work because, contrary to *Burgess*, it would allow for the post-petition creation of estate property. *See Burgess*, 438 F.3d at 503. For example, a debtor with a $20,000 total tax liability for the year may withhold $10,000 pre-petition and $10,000 post petition, resulting in no refund. However, if the same debtor withholds $15,000 post-petition, the entire $5,000 refund, by this rule, would be estate property, even though the interest of the debtor in a refund on the petition date is identical in both scenarios. This cannot be right. *See id.*

The same analysis helps us to quickly resolve how much of Mrs. Donnell's tax refund attributable to withholding is property of the estate. The record indicates that Mrs. Donnell had $613 withheld from her unemployment benefits in the pre-petition period. This exceeded Mrs. Donnell's tax liability of $382 by $231. As with Mr. Donnell, this $231 is allocable to the estate.

### Allocating the Tax Refund – Earned Income Credit Where There is No Pre-petition Earned Income

The Earned Income Credit ("EIC") is the next possible source of a refund. *See* 26 U.S.C. § 32. The Tenth Circuit has ruled that the portion of a tax refund attributable to EICs can be property of the estate. *Montgomery v. Jones (In re Montgomery)*, 224 F.3d 1193, 1195 (10th Cir. 2000). *Montgomery* held "Given that EICs are to be treated as tax refunds . . . a debtor's EIC for a tax year, as pro-rated to the date the bankruptcy petition was filed, is property of the estate . . . ." 224 F.3d at 1195. That decision is persuasive authority for the proposition that some or all of the

EIC is property of the estate, but only if it also squares with *Burgess*, which requires a court to determine whether the debtor can be said to have had a legal or equitable interest in that aspect of the refund as of the commencement of the case. *Burgess*, 438 F.3d, at 503. Despite the fact that the amount of the EIC is only liquidated at the end of the year, it is fair to say that the EIC accrues throughout the year; indeed, an electing taxpayer may elect to receive actual periodic payment of the EIC during the tax year without having to wait until the return is filed. 26 U.S.C. § 3507. Thus, at first blush, the *Burgess* predicate appears to be satisfied.

To know how much of the EIC might be estate property, both *Burgess* and section 541 of the Bankruptcy Code itself require the court to identify the interest that the debtor can be said to have had as of the commencement of the case. While the Court agrees with *Montgomery* that the portion of a refund resulting from the pre-petition portion of the debtor's EIC is property of the estate, the Court cannot agree with the Tenth Circuit's pro-rata allocation of the EIC as the method for determining the pre-petition portion, because that methodology does not square with *Burgess*. Mere passage of time does not create that interest; rather, to have a legal entitlement to the EIC, the debtor must qualify for it under the Internal Revenue Code.

A taxpayer qualifies for the Earned Income Credit by generating "earned income," as defined in the Internal Revenue Code. 26 U.S.C. § 32(a). Subject to several limitations, the amount of the credit allowed is equal to "the credit percentage of so much of the taxpayer's earned income as does not exceed the earned income amount." *Id. See also* IRS Publication 596 "Earned Income Credit (EIC)" (2005). "Earned income" includes wages, salaries and tips. 26 U.S.C. § 32(c)(2). The amount of the credit is limited, *inter alia*, by the "phaseout percentage" of the taxpayer's gross income. *Id.* § 32(a)(2). The credit and phaseout percentages combine to provide a wage earner with an EIC that gradually increases with earned income until a maximum amount is reached. Then the EIC begins

-21-

to phase out as earned income for the tax year continues to grow. *See* IRS Pub. 596 at 44-50 (containing tables demonstrating the growth, and then reduction, of the credit).

Of course, if a taxpayer has no earned income, she is entitled to no EIC. *See* 26 U.S.C. § 32. The relevant evidence before the Court shows that Mrs. Donnell's[21] pre-petition income came from her Texas unemployment benefits. Unemployment benefits are not "earned income" for purposes of the EIC. Treas. Reg. § 1.23-2(c)(2). Thus, Mrs. Donnell had no section 32 earned income in the pre-petition part of the tax year. The only evidence of earned income for Mrs. Donnell (pay stubs from a number of jobs within the relevant tax year) shows only post-petition dates. Accordingly, as of the petition date, the evidence fails to establish that Mrs. Donnell had any legal or equitable interest in a refund attributable to the EIC. The estate therefore has no claim on a refund due to the EIC from Mrs. Donnell.

### Allocating the Tax Refund - Additional Child Tax Credits

The final potential source of a tax refund in this case is the Child Tax Credit (or "CTC"). The CTC is codified in the Internal Revenue Code in Subtitle A, Chapter 1, Subchapter A, Part IV, Subpart A, in a section entitled "Nonrefundable Personal Credits." 26 U.S.C. § 24. This credit is different from the EIC, which is contained in Subpart C, "Refundable Credits." As a nonrefundable credit, the CTC as such is limited to the amount of the taxpayer's tax liability. 26 U.S.C. § 26. That is to say, the credit is available only to offset tax liability. Any amount of a the credit that exceeds the taxpayer's income tax liability is essentially lost (*i.e.*, it is "nonrefundable"). *Id.*

Unlike the EIC, a taxpayer begins the year with a CTC equal to $1,000 for each "qualifying child." 26 U.S.C. § 24(a). Barring the addition of another qualifying child during the tax year, the

---

[21] Mr. Donnell's income tax return shows no earned income credit, so there is nothing for the Court to allocate for him..

credit remains constant until a taxpayer's modified adjusted gross income exceeds a threshold amount (in Mrs. Donnell's case: $55,000, which is the amount for married individuals filing separately). *Id.* at § 24(b). Once this income threshold is reached, the amount of the credit is reduced by "$50 for each $1,000 (or fraction thereof) by which the taxpayer's modified adjusted gross income exceeds the threshold amount." *Id.*

The CTC as thus far described would thus not form a component of any tax refund because no part of the credit is ever "due" back to the taxpayer/debtor. Following *Burgess*, the debtor could have no interest in such a "credit" because the debtor at no time has a legal entitlement to claim a refund from the I.R.S. attributable to that credit. Even if the CTC operated to reduce the debtor's tax liability, thus creating the opportunity for a refund, the refund itself would be attributable to a legal entitlement to be refunded some other tax credit, such as wage withholding or the EIC. The CTC itself, being nonrefundable, would be irrelevant, insofar as determining what might be property of the estate.[22]

That is not the end of it, however. Congress provided an additional tax break to working parents by allowing a portion of this otherwise nonrefundable CTC to be treated as a refundable credit. *See id.* § 24(d). Section 24(d) implements the so-called "additional child tax credit." The additional CTC is not actually an additional credit on top of the CTC; rather, it simply allows for the refund of some of the CTC under certain conditions. *Id.* In 2005, taxpayers qualified for the

---

[22] This brief discussion highlights the importance of the Fifth Circuit's holding in *Burgess*, and its impact on what had been the mantra-like recitation of *Segal*'s phraseology, "sufficiently rooted in the pre-bankruptcy past." Courts misapplying the "sufficiently rooted" concept as a test for determining the scope of property of the estate could colorably argue that some portion of the refund ultimately generated by virtue of the presence of the CTC *should* be treated as property of the estate, on the theory that the CTC "contributed" to the creation of the refund by reducing the debtor's tax liability, thereby increasing the potential refund. The argument would proceed that the refund generated indirectly by the CTC would nonetheless be "sufficiently rooted in the prebankruptcy past" to warrant its being swept into the estate. That rationale, as we have noted, represents a flawed understanding of *Segal* itself. *See* discussion *supra*. It is in all events foreclosed in this circuit after *Burgess*, which demands that a court identify the legal or equitable interest in property *in esse* as of the commencement of the case.

additional CTC by having, *inter alia*, "earned income" greater than $11,000 in the tax year. *See* IRS Form 8812 (2005); 11 U.S.C. § 24(d). For taxpayers such as the Donnells, up to fifteen percent of the amount of "earned income" exceeding $11,000 qualified for treatment as refundable additional CTC, in lieu of non-refundable CTC. 26 U.S.C. § 24(d).

The case law is somewhat confused regarding whether a refund resulting from the additional CTC can be property of the estate. *In re Schwarz*, 314 B.R. 433 (Bankr. D. Neb. 2004) held that neither the refundable portion nor the nonrefundable portion of the CTC were property of the estate because the CTC was after-acquired property. The bankruptcy court there focused upon the differing treatment of the EIC and the CTC in the Internal Revenue Code to distinguish *Montgomery*'s holding that refunds resulting from EICs can be property of the estate. The court reasoned that Congress intended the EIC to be treated differently from the CTC because, unlike the EIC, 1) the CTC is bifurcated into refundable and nonrefundable components, and 2) the tax code contains no provision allowing the taxpayer to receive an advance on the CTC. *Id.* at 435; 26 U.S.C. § 3507 (requiring employers to pay "advance earned income" amounts of the EIC to their employees).[23]

*In re Law*, 336 B.R. 144, 146-47 (Bankr. W.D. Mo. 2005), *aff'd*, 336 B.R. 780 (B.A.P. 8th Cir. 2006) disagreed with the holding in *Schwarz*. *Law* held that the nonrefundable portion of the CTC was not property of the estate, but that the Additional CTC (the refundable portion) was. The court wrote:

> The decision here is driven by the Supreme Court's statement in *Sorenson v. Secretary of the Treasury of the United States*[24] that the refundability of the federal earned income tax credit ("EIC") makes it "inseparable from its classification as an overpayment of tax," and the precedent in this jurisdiction that overpayments of tax,

---

[23] Of course, without a pre-petition employer, Mrs. Donnell did not receive advance EIC payments during the pre-petition period, so whatever rights section 3507 may vest in a taxpayer were not available to Mrs. Donnell as of the commencement of the case.

[24] 475 U.S. 851 (1986) (footnote renumbered).

> i.e., tax refunds (including the EIC) are property of the estate. The Court recognizes that there are differences in underlying policy and mechanics between the EIC and the child tax credit, but the Court finds the Supreme Court's emphasis on refundability to be dispositive on this issue.

*Id.* at 147 (footnotes omitted). The debtors subsequently appealed this holding to the Eighth Circuit B.A.P. The B.A.P. in turn affirmed the bankruptcy court's holding, but rejected the bankruptcy court's reliance on *Sorenson*, partly because *Sorenson* was not a bankruptcy case and partly because CTCs are not fully refundable. *Law v. Stover (In re Law)*, 336 B.R. 780, 782 (B.A.P. 8th Cir. 2006). After reviewing the relevant sections of the Internal Revenue Code, the court wrote:

> All of the statutory differences between the EITC and the CTC noted above are significant for tax purposes, but not for bankruptcy purposes. From a bankruptcy point of view, both types of credits are contingent interests on the petition date. For that reason, and despite the distinctions between them, they become property of the bankruptcy estate.

> In light of our detailed review of the statutory differences relied on in *Schwarz*, we find that the differences are not significant for purposes of the question before the court, i.e., what constitutes property of the estate. To that extent, we find that Schwarz was not properly decided.

*Id.* at 783-84. The B.A.P. did not further discuss the status of the non-refundable portion of the CTC.

None of the foregoing analyses of the handling of the CTC as potential property of the estate is satisfying. There is, for instance, no compelling reason why the handling of EIC's should determine the treatment of CTC's, as was suggested by the B.A.P. in *Law*. The plain language of section 541, and the Fifth Circuit's directive in *Burgess* to attend closely to that plain language requires a court to instead examine the nature of a debtor's legal and equitable entitlements under the Internal Revenue Code with regard to additional CTC.

To possess an interest on the petition date, a taxpayer would have to meet the requirements of section 24 of the Internal Revenue Code, including the requirements in section 24(d) for the additional (refundable) CTC. 26 U.S.C. § 24. In other words, for any of the tax refund attributable

-25-

to the additional CTC to be property of the estate, the evidence must show that, as of the petition date, the statutory requirements for the additional CTC have been met. This means, on our facts, the evidence would have to show that Mrs. Donnell[25] had a qualifying child on the petition date and that she had enough earned income on the petition date to qualify for the additional CTC.

Mrs. Donnell had $540 of additional CTC. As previously noted, the only income that Mrs. Donnell had in the pre-petition portion of the tax year was her unemployment compensation, which is not "earned income" under section 32 of the Internal Revenue Code. 26 C.F.R. § 1.32-2(c)(2). Mrs. Donnell had two qualifying children, but because she had no pre-petition *earned* income, she had no legal or equitable interest in a refund resulting from an additional child tax credit as of the bankruptcy petition date. 26 U.S.C. § 24(d). Any interest in her additional CTC necessarily arose post-petition, when she first had earned income for the year. Accordingly, none of Mrs. Donnell's refund attributable to additional CTC is property of the estate.

### Conclusion

The Court has found that, of Mr. Donnell's $6,729 refund, $592 is due to excessive pre-petition withholding, rendering that amount property of the estate. This withholding was the only source of Mr. Donnell's refund. Accordingly, judgment is rendered for the trustee in the amount of $592 against Mr. Donnell.

The Court has also found that, of Mrs. Donnell's $4,338 refund, $231 is due to excessive pre-petition withholding, making that amount of the refund property of the estate. The estate has no claim upon any portions of Mrs. Donnell's refund due to her earned income credit or additional child tax credit. Accordingly, the Court renders judgment for the Trustee in the amount of $231 against Mrs. Donnell.

---

[25] Again, Mr. Donnell had no additional CTC, so the Court need not apply this rule to his refund.

# # #